IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KABESHA COOK, | ) | CASE NO. 1:13 CV 285 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.      Nature of the case and proceedings**

Before me[1] is an action by Kabesha Cook under 42 U.S.C § 405(g) for judicial review

of the final decision of the Commissioner of Social Security denying her applications for

disability insurance benefits and supplemental security income.[2] The Commissioner has

answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 14. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 11.

[5] ECF # 5.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] The matter is capable of being decided without a telephonic oral argument.[10]

**B.    Background facts and decision of the Administrative Law Judge ("ALJ")**

Cook, who was 43 years old at the time of the hearing,[11] has an eleventh grade education[12] and has worked as a cashier and a home health aide.[13] She lives with two of her sons, and is regularly involved in church activities.[14]

The ALJ, whose decision became the final decision of the Commissioner, found that Cook had the following severe impairments: insulin-dependent diabetes mellitus, asthma, obstructive sleep apnea, obesity, and depression.[15]

---

[6] ECF # 12.

[7] ECF # 16 (Commissioner's brief); ECF # 15 (Cook's brief).

[8] ECF # 16-1 (Commissioner's charts); ECF # 15-2 (Cook's charts).

[9] ECF # 15-1 (Cook's fact sheet).

[10] *See*, ECF # 20. Although originally scheduled for such an argument, after a review of the file and the briefs of the parties, it was determined that the matter could be adjudicated without such hearing.

[11] Transcript ("Tr.") at 89.

[12] *Id.* at 112.

[13] *Id.* at 24.

[14] *Id.* at 19.

[15] *Id.* at 14.

After concluding that the relevant impairments did not meet or equal a listing, the ALJ

made the following finding regarding Cook's residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that from June 25, 2010,
> the amended alleged onset date, through the date of this decision, based on all
> of her impairments, Ms. Cook had and has the residual functional capacity to
> perform work activities except for the following limits on her ability to work.
>
> > Ms. Cook could and can do work at the sedentary exertional level only,
> > with all that implies with respect to exertional and postural limitations
> > (*See* CFR 404.1567 and 416.967), subject to the following additional
> > limitations.
> > Ms. Cook had to have and has to have a sit/stand option.
> > Ms. Cook could and can bend, stoop, crouch, squat, kneel, and crawl up
> > to and no more than occasionally.
> > Ms. Cook could and can climb steps and ramps up to and no more than
> > occasionally.
> > Ms. Cook could not and cannot climb ladders, ropes, or scaffolds.
> > Ms. Cook could not and cannot perform work in an environment where
> > there is exposure to fumes, chemicals, dust, or agricultural or
> > landscaping pollens in concentrations that exceed what would be in the
> > environment outside of or away from the workplace.
> > Ms. Cook could not and cannot work in proximity to unprotected
> > heights, dangerous moving machinery, or other workplace hazards.
> > Ms. Cook could not and cannot operate a motor vehicle as part of a job.
> > Ms. Cook could and can do low-stress work only.
> > Ms. Cook could not and cannot do work involving high or strict
> > production quotas.
> > Ms. Cook could not and cannot do assembly line work or piece rate
> > work.
> > Ms. Cook could not and cannot do work involving negotiation,
> > arbitration, confrontation, or other intense interpersonal interactions
> > with the public, coworkers, or supervisors.
> > Ms. Cook could not and cannot manage or supervise other people.
> > Ms. Cook could not and cannot do work involving her being
> > responsible for the health, safety, or welfare of other people.[16]

---

[16] *Id.* at 20-21.

-3-

The ALJ decided that this residual functional capacity precluded Cook from performing her past relevant work.[17] Alternatively, based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Cook could perform.[18] The ALJ, therefore, found Cook not under a disability.[19]

## C.      Issues on judicial review and disposition

Cook asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Cook presents the following issues for judicial review:

- The ALJ gave the opinion of her treating endocrinologist, Dr. Sayed-Kassem, "less weight" as to the limitation that she would need unscheduled work breaks for hypoglycemic and hyperglycemic episodes on a weekly basis. The ALJ did not incorporate that limitation in the RFC. The VE testified that, with such a limitation, no jobs would exist that she could perform. Does substantial evidence support the ALJ's exclusion of the limitation from the RFC and the weight assigned to Dr. Sayed-Kassem's opinion?

- The ALJ gave considerable weight to the testimony of the medical expert, Dr. Schweid, a psychiatrist. Dr. Schweid testified that he did not have enough information to determine whether Cook would require unscheduled breaks as opined by Dr. Sayed-Kassem. Does substantial evidence support the ALJ's decision to give more weight to

---

[17] *Id.* at 24-25.

[18] *Id.* at 25-27.

[19] *Id.* at 27.

Dr. Schweid's opinion than given to that of the treating endocrinologist?

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

**A.     Standards of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner

_____

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

-5-

survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2.    *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[23]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[24]

---

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[23] 20 C.F.R. § 404.1527(d)(2).

[24] *Id.*

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[25] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[26]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[27] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[28] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[29] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[30]

In *Wilson v. Commissioner of Social Security*,[31] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in

---

[25] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[26] *Id.*

[27] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[28] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[29] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[30] *Id.* at 535.

[31] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

the context of a disability determination.[32] The court noted that the regulation expressly

contains a "good reasons" requirement.[33] The court stated that to meet this obligation to give

good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[34]

The court went on to hold that the failure to articulate good reasons for discounting

the treating source's opinion is not harmless error.[35] It drew a distinction between a

regulation that bestows procedural benefits upon a party and one promulgated for the orderly

transaction of the agency's business.[36] The former confers a substantial, procedural right on

the party invoking it that cannot be set aside for harmless error.[37] It concluded that the

requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight

---

[32] *Id.* at 544.

[33] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[34] *Id.* at 546.

[35] *Id.*

[36] *Id.*

[37] *Id.*

to a treating physician's opinion created a substantial right exempt from the harmless error rule.[38]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[39] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[40] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[41] *Blakley v. Commissioner of Social Security*,[42] and *Hensley v. Astrue*.[43]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[44] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[45] These factors are expressly set out in 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Only if the ALJ decides not to give

---

[38] *Id.*

[39] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (2013).

[40] *Id.* at 375-76.

[41] *Rogers*, 486 F.3d at 242.

[42] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[43] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[44] *Gayheart*, 710 F.3d at 376.

[45] *Id.*

the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (3)-(6) and §§ 416.927(c)(2)(i)-(ii), (3)-(6).[46] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[47]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[48] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[49] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(c)(i)-(ii), (3)-(6) of the regulations,[50] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[51] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[52]

---

[46] *Id.*

[47] *Rogers*, 486 F.3d at 242.

[48] *Gayheart*, 710 F.3d at 376.

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[53]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[54] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[55] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[56] or that objective medical evidence does not support that opinion.[57]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes

---

[53] *Id.*

[54] *Rogers*, 486 F.3d 234 at 242.

[55] *Blakley*, 581 F.3d at 406-07.

[56] *Hensley*, 573 F.3d at 266-67.

[57] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[58] The Commissioner's *post hoc* arguments on judicial review are immaterial.[59]

Given the significant implications of a failure to properly articulate (*i.e.*, remand mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[60]

- the rejection or discounting of the weight of a treating source without assigning weight,[61]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[62]

---

[58] *Blakley*, 581 F.3d at 407.

[59] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

[60] *Blakley*, 581 F.3d at 407-08.

[61] *Id.* at 408.

[62] *Id.*

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[63]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[64] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[65]

The Sixth Circuit in *Blakley*[66] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[67] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[68]

In *Cole v. Astrue*,[69] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently

---

[63] *Id.* at 409.

[64] *Hensley*, 573 F.3d at 266-67.

[65] *Friend*, 375 F. App'x at 551-52.

[66] *Blakley*, 581 F.3d 399.

[67] *Id.* at 409-10.

[68] *Id.* at 410.

[69] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

-13-

deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[70]

## B.    Application of standards

As will be developed below, this case turns on whether the ALJ properly evaluated the opinion of Laure Sayyed-Kassem, M.D., Cook's treating endocrinologist.

In particular, the ALJ in discussing the opinion evidence of record[71] initially gave "partial" weight to Dr. Sayyed-Kassem's opinion that Cook's prognosis for diabetes was "good,"citing no reasons in this discussion for the weight assigned on this issue.[72] The ALJ apparently also then partially credited Dr. Sayyed-Kassem's opinion that Cook's mental impairments "seldom interfere with her attention and concentration."[73]

---

[70] *Id.* at 940.

[71] I note that although this discussion is under a heading explicitly for "opinion evidence," the ALJ discussed opinion evidence at other places in the opinion, and quoted with apparent approval and no contradictory evidence Dr. Sayyed-Kassem's opinion that Cook has experienced "no impairments" from her diabetes, which has a "good prognosis" for remaining under control if Cook continues her compliance with a treatment protocol of insulin injections four times per day. *Id.* at 17.  The ALJ then relied on this evidence, along with other evidence, to find that Cook's diabetes did not meet the listing. *Id.* The ALJ apparently intended that crediting Dr. Sayyed-Kassem's opinion in this context was the reason for the "partial" weight given to Dr. Sayyed-Kassem's opinion later in the passage cited above.

[72] Tr. at 23.

[73] *Id.*

-14-

Then, in the finding most contested here, the ALJ gave "less weight" to Dr. Sayyed-Kassem's opinion that Cook would require unscheduled work breaks "for hypoglycemic and hyperglycemic episodes on a weekly basis because the record as a whole does not support this opinion."[74] As reasons in support of this finding, the ALJ contrasted Dr. Sayyed-Kassem's opinion that Cook would need "to attend to hypoglycemic and/or hyperglycemic episodes frequently,"[75] with:

    (1)    a report by Adi Gerblich, M.D., a pulmonary disease and critical care specialist, who opined that Cook has "no limitations on sedentary activity;"[76]

    (2)    a report by J. Joseph Konieczny, Ph.D., a psychologist, who makes no direct mention of Cook's diabetes, but did note that despite some unspecified "medical conditions" that produce "physical limitations," Cook nevertheless functions at an overall level of "slightly" reduced efficiency;[77] and

    (3)    a discharge summary from Euclid General Hospital which stated that "with medications well tolerated and with fair control of blood sugar," Cook was discharged to resume "pre-hospital activities."[78]

While Cook argues that the above-cited opinions support Dr. Sayyed-Kassem's conclusion that Cook's "blood sugar is not under good control,"[79] the ALJ, as noted above,

---

[74] *Id.*

[75] *Id.* at 909.

[76] *Id.* at 708.

[77] *Id.* at 753.

[78] *Id.* at 768.

[79] ECF # 15 at 11.

found that Dr. Sayyed-Kassem's opinion actually included observations that Cook has experienced "no impairments" from her diabetes, and that there is a "good prognosis" for her compliance with the treatment of insulin injections four times per day.[80] Further, Dr. Sayyed-Kassem's opinion as to unscheduled breaks speaks of them being needed "in case of insulin reactions."[81]

Plainly, taken together, and understood in light of the other opinions cited above, particularly the consistent view that Cook has experienced no limitations on sedentary activity due to her diabetes, the ALJ had good reasons, sufficiently articulated with citations to the record, for not crediting the portion of Dr. Sayyed-Kassem's opinion dealing with what might occur if the prognosis for Cook's diabetes is other than as expected.

That said, the remaining argument concerning the ALJ's treatment of the opinion of Dr. Schweid, the medical expert and a psychiatrist, is not relevant. Dr. Schweid testified that he did not have sufficient information to address whether Cook would require unscheduled breaks to deal with insulin reactions.[82] Inasmuch as the ALJ's analysis of Dr. Sayyed-Kassem's opinion was supported by substantial evidence and adequately articulated, any error in the ALJ's handling of Dr. Schweid's testimony would be harmless since it would have no bearing on the ultimate findings.

---

[80] *See*, Tr. at 17 (citing Tr. at 904-05).

[81] Tr. at 906.

[82] *See*, *id.* at 23-24. Consequently, regardless of what weight the ALJ assigned to the opinions that Dr. Schweid did give, he offered no opinion about the need for unscheduled breaks to address insulin reactions.

**Conclusion**

Substantial evidence supports the finding of the Commissioner that Cook had no disability. The denial of Cook's applications is affirmed.

IT IS SO ORDERED.


Dated: March 10, 2014                         s/ William H. Baughman, Jr.
                                              United States Magistrate Judge

-17-